UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
JOHN VIDUREK and KIMBERLY
VIDUREK,
                Plaintiffs,      :

v.      :

JOHN KOSKINEN, BRENDA DIAL,
JOHN/JANE DOE, J. MELENDEZ,
MARYELLEN BENECKE, LINDA PIACK,
JEANETTE WILLET, DANIEL H.
SCHULMAN, GUY CHIARELLO, MARY
MADDEN, MICHAEL J. QUINN, JACK
DORSEY, and IRS,
                Defendants.      :
------------------------------------------------------------x

**OPINION AND ORDER**

17 CV 9064 (VB)

*Copies Mailed/~~Faxed~~*
*Chambers of Vincent L. Briccetti*
7/25/2018

Briccetti, J.:

      Plaintiffs John Vidurek and Kimberly Vidurek, proceeding pro se, bring this action

against defendants the Internal Revenue Service ("IRS"), former IRS commissioner John

Koskinen,[1] current IRS employees Brenda Dial, John/Jane Doe,[2] Jonnie Melendez, Maryellen

Benecke, Linda Piatek,[3] and Jeanette Willet (collectively, the "Federal Defendants"); Daniel

Schulman, president and CEO of PayPal Holdings Inc.;[4] Guy Chiarello, president of First Data

---

[1]     Plaintiffs do not allege any personal involvement by Mr. Koskinen. Accordingly, the Court interprets the complaint to be against Mr. Koskinen in his official capacity only.

[2]     The motion papers filed by the Federal Defendants identify the John/Jane Doe defendant as Layne Carver.

[3]     Incorrectly sued herein as Linda Piack.

[4]     Defendant Schulman has not appeared in this case. However, as set forth below (Discussion, Part III), Schulman was never properly served with the summons and complaint.

1

Merchant Services LLC;[5] Mary Madden, president and CEO of Hudson Valley Federal Credit Union ("HVFCU"); Michael Quinn, president and CEO of Rhinebeck Savings Bank ("RSB"); and Jack Dorsey, president and CEO of Square Inc.,[6] for claims arising out of assessments of and attempts to collect federal income taxes from plaintiffs.

Plaintiffs assert claims for violations of various federal criminal statutes, specifically, conspiracy against civil rights (18 U.S.C. § 241), deprivation of civil rights under color of law (id. § 242), mail fraud (id. § 1341), making false statements (id. § 1001), and the Racketeer Influenced and Corrupt Organizations Act ("RICO") (id. § 1961, et seq.). Plaintiffs also assert state law claims for "trespass on the case," fraud, negligence, vindictive recklessness, abuse of process, and harassment. (Compl. at 2).[7]

In addition, plaintiffs bring constitutional claims for due process violations and unreasonable seizure pursuant to 42 U.S.C. § 1983, and for conspiracy to violate civil rights under 42 U.S.C. §§ 1985 and 1986. Plaintiffs also appear to seek civil damages for unauthorized tax collection.

Now pending are four motions: (i) Michael Quinn's motion to dismiss the complaint under Rule 12(b)(6) and for an order enjoining plaintiffs from filing future complaints against him and his employer (Doc. #5); (ii) Guy·Chiarello's motion to dismiss the complaint under Rules 12(b)(5) and 12(b)(6) (Doc. #8); (iii) Mary Madden's motion to dismiss the complaint

---

[5]    In January 2016, First Data Merchant Services Corporation changed its name to First Data Merchant Services LLC.

[6]    Defendant Dorsey has not appeared in this case. However, as set forth below (Discussion, Part III), Dorsey was never properly served with the summons and complaint.

[7]    As used herein, "Compl. at __" refers to the page number at the bottom of each page of the complaint. (Doc. #1).

under Rule 12(b)(5) and motion for judgment on the pleadings under Rule 12(c) (Doc. #21); and (iv) Federal Defendants' motion to dismiss the complaint under Rules 12(b)(1), 12(b)(5), and 12(b)(6). (Doc. #35).

For the following reasons, the motions of Quinn, Chiarello, and the Federal Defendants to dismiss the complaint, as well as Madden's motion for judgment on the pleadings, are GRANTED. Quinn's motion for a filing injunction is also GRANTED.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## BACKGROUND

The following factual background is drawn from the complaint and the documents attached as exhibits thereto, which the Court may consider in deciding the pending motions. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002). For the purpose of deciding the pending motions, the Court accepts as true all well-pleaded factual allegations in the complaint and draws all reasonable inferences in plaintiffs' favor, as summarized below.

I.  Plaintiffs' Tax History

Plaintiffs assert they are not subject to federal tax assessment or collection by the IRS. Plaintiffs allege "the IRS is a foreign corporate trust created in [the] Philippines" and/or Puerto Rico, and the Internal Revenue Code "is not law," but "only defines a contract between the IRS and an individual," and "applies only to the Philippines, Puerto Rico, District of Columbia, Virgin Islands, Guam, Northern Mariana Islands, territories, and insular possessions, for such items as narcotics, alcohol, tobacco, and firearms." (Compl. at 34–35).

On March 26, 2012, the IRS sent Vidurek[8] a "Proposed Individual Income Tax Assessment," which stated the IRS had no record of having received an individual tax return from Vidurek for the 2009 tax year and calculated Vidurek owed $119,012.13. (Compl. Ex. 1). On July 2, 2012, the IRS sent Vidurek a "Notice of Deficiency" in the amount of $81,413.00 for the 2009 tax year. (Compl. Ex. 2).

On July 13, 2012, Vidurek sent the IRS a "Notice and Demand," in which he contested the Notice of Deficiency, demanded the IRS correct its files as to Vidurek, and listed various potential causes of action against the IRS. (Compl. Ex. 3).

By letter dated August 15, 2012, the IRS informed Vidurek it was reviewing his correspondence and would contact him within forty-five days with a reply. Plaintiff received no response.

Vidurek then received an IRS notice dated December 17, 2012, stating he owed $124,762.43 for the 2009 tax year, which he was required to pay by January 2, 2013, to avoid additional penalty and interest charges. In response, on January 11, 2013, Vidurek sent a "Second Notice and Demand" to the IRS, asserting he was not liable for the assessed taxes because the Internal Revenue Code "is not the law" and there is no contract between the IRS and Vidurek, again demanding the IRS correct their files, and again threatening legal action. (Compl. Ex. 6).

Also on January 11, 2013, Vidurek sent a Freedom of Information Act request to the IRS for his individual master files for tax years 2009 through 2012, as well as other documents. On February 5, 2013, Vidurek received a full response to his request. The IRS provided the

---

[8]     Kimberly Vidurek, John Vidurek's wife, is also a named plaintiff in this case. However, the relevant facts relate only to John Vidurek. Therefore, all references to "Vidurek" herein are references to John Vidurek.

individual master files, but, plaintiffs allege, not the necessary program or information to decode them.

The IRS sent Vidurek another notice, dated January 21, 2013, stating the amount Vidurek owed for 2009 had increased to $125,528.52. Thereafter, Vidurek sent the IRS a letter and affidavit dated January 25, 2013, stating he never received the $236,911.00 in reported taxable income that was the basis of the Proposed Assessment.

The IRS then sent Vidurek a "Notice of intent to levy" dated April 8, 2013, which indicated that if Vidurek did not call the IRS or pay $127,136.99 by April 18, 2013, the IRS might levy any state tax refund to which Vidurek was entitled and take possession of other property, the proceeds of which would be applied to the amount the IRS stated Vidurek owed. (Compl. Ex. 11). In response, Vidurek sent a "Fo[u]rth Notice to Correct Records," dated April 10, 2013. (Compl. Ex. 12).

The IRS sent Vidurek a "Final Notice" of "Intent to Levy and Notice of Your Right to a Hearing," dated April 15, 2013. (Compl. Ex. 13). On April 22, 2013, Vidurek responded to the IRS by letter, again asserting the IRS had no authority to tax him. On April 29, 2013, the IRS sent Vidurek notice that the IRS would be in contact with third parties in an attempt to collect the unpaid taxes. Vidurek responded to the IRS, objecting to any attempt to collect taxes from him.

On May 7, 2013, the IRS sent Vidurek a "Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320," which indicated a federal tax lien had been filed with the Dutchess County Clerk in the amount of $124,762.43. (Compl. Ex. 20).

On May 15, 2013, the IRS issued a summons to RSB and HVFCU. The summonses required RSB and HVFCU to "[p]rovide copies of all opening account records and bank statements in which John E. Vidurek . . . is listed as a signatory from January 1, 2007 through

December 31, 2008 and January 1, 2010 through December 31, 2012." (Compl. Ex. 21). On May 25, 2013, plaintiffs sent a notice and demand to both RSB and HVFCU, registering plaintiffs' objection and affirmatively withholding plaintiffs' consent for the banks to provide information to the IRS.

On August 7, 2013, the IRS sent Vidurek a determination letter, which stated plaintiffs were not required to file a tax return for the 2009 tax period. On September 2, 2013, the IRS sent plaintiffs a notice that, after eliminating or decreasing most taxes, penalties, interest, and fees previously levied, Vidurek owed $80.64 for the 2009 tax year. In addition, the IRS provided a "Certificate of Release of Lien" dated September 18, 2013, for the amount of $124,762.43. (Compl. Ex. 26).

Approximately one year later, on August 25, 2014, the IRS sent Vidurek an Income Tax Examination Changes form for changes to Vidurek's taxes owed for 2008 and signed by "Tax Examiner – MS 4388."[9] (Compl. Ex. 28). On October 27, 2014, the IRS sent plaintiff another deficiency notice claiming $1,507 for 2008, signed by both the IRS Commissioner and defendant Brenda Dial, an IRS service agent.

On November 8, 2014, Vidurek sent defendants Layne Carver, Brenda Dial, and IRS Commissioner John Koskinen a notice and demand. Vidurek's notice asserted the attempt to collect taxes and penalties for 2008 was time-barred, and he would not contest the tax determination in a court because "under the Constitution Article III Section 2[,] Article III courts lack jurisdiction to hear tax cases . . . [and] tax court[s] . . . can provide no remedy for People." (Compl. Ex. 30). Vidurek also contested the $80.64 deficiency for the 2009 tax year. In response, on November 14, 2015, defendant Jonnie Melendez, an intake advocate at the

---

[9]     Identified as defendant Layne Carver.

Taxpayer Advocate Service of the IRS, wrote to Vidurek and declined to address each argument raised in the November 8, 2014, letter because they "appear[ed] to be frivolous and have no basis in law." (Compl. Ex. 31).

Several months later, on July 11, 2016, the IRS sent a letter of intent to seize Vidurek's assets as payment for $2,745.05 owed for 2008. The letter warned that the IRS might seize Vidurek's property on or after August 10, 2016, if it did not receive payment. The letter informed Vidurek he could appeal by requesting a Collection Due Process hearing. From November 23, 2016, to August 23, 2017, the IRS intercepted a portion of Vidurek's monthly social security payments and applied them toward Vidurek's taxes owed for 2008. (See Compl. Exs. 33, 36, 37, 42).

On June 13, 2017, defendant Maryellen Benecke, on behalf of the IRS, sent Vidurek a notice, asserting he had not filed a tax return for 2014 and scheduling a meeting to discuss the remaining outstanding tax payment. On June 15, 2017, Vidurek declined the meeting and asserted he was "not a person liable." (Compl. Ex. 35). On August 1, 2017, Vidurek received another letter requesting he meet with the IRS, this time from defendant Linda Piatek. Again, Vidurek declined the meeting, insisting his tax status for 2009 "was the same for 2014." (Compl. Ex. 40).

On August 23, 2017, the IRS issued summonses to defendants RSB and HVFCU, in addition to other institutions. The issuing officer listed on all of the summonses was Linda Piatek and the approving officer was defendant Jeanette Willet. The summonses required the institutions to appear before Piatek, give testimony, and produce books and records relating the Vidureks' tax liability. Plaintiffs allege RSB and HVFCU shared plaintiffs' financial information without informing plaintiffs and without plaintiffs' consent.

Plaintiffs allege the IRS subjected Vidurek to heightened scrutiny in connection with the above tax assessments and collection actions because Vidurek is a Tea Party organizer, and IRS agents "singled [him] out for political reasons, with intent to punish." (Compl. at 3).

Plaintiffs further allege they "never gave consent or jurisdiction to defendants to summons personal information, protected under the [Fourth] Amendment, from any financial institutions or any other third parties. . . . Plaintiff(s) forbad[e] defendants from summonsing information from third parties." (Compl. at 33).

II.    Prior Actions Brought by Vidurek and Plaintiffs

On June 27, 2013, a case plaintiffs filed in New York State Supreme Court, Dutchess County, was removed to federal court and assigned to this Court. (Vidurek v. Miller, 13 Civ. 4476 (S.D.N.Y.), Doc. #1). Plaintiffs asserted largely the same claims regarding the 2008 tax lien described above. Contrary to plaintiffs' assertion that the case settled, the Court dismissed the case by Order dated February 27, 2014. (Id., Doc. #38).

On March 13, 2015, Vidurek filed a complaint in this district against the Clerk of Court and a John Doe defendant alleging the Clerk of Court, having received a complaint from Vidurek to begin a new action against Koskinen, failed to file the complaint and returned the papers to Vidurek. Vidurek v. Krajick, 15 Civ. 2175 (S.D.N.Y.). On September 4, 2015, the case was dismissed because plaintiff failed to pay the court filing fees or complete a request to proceed in forma pauperis. (Id., Doc. #4).

Also on March 13, 2015, Vidurek filed a complaint against defendants Koskinen, Dial, Melendez and other IRS employees for claims arising from the same 2008 tax lien described above. Vidurek v. Koskinen, 15 Civ. 2188 (S.D.N.Y.). On May 11, 2015, the case was

dismissed because plaintiff failed to pay the court filing fees or complete a request to proceed in forma pauperis. (Id., Doc. #5).

On October 4, 2017, plaintiffs filed an action against all defendants named in the instant case and arising out of the same facts. Vidurek v. IRS, 17 Civ. 7971 (S.D.N.Y.). By Order dated November 30, 2017, Chief Judge McMahon dismissed plaintiffs' case because (i) by letter dated November 16, 2017, plaintiffs requested the court reassign the action to White Plains; (ii) plaintiffs already had filed the instant case (17 Civ. 9064) on November 20, 2017, and therefore the prior case was duplicative; and (iii) by letter dated November 17, 2017, but docketed on November 30, plaintiffs asserted they wished to withdraw the case. (Id. Doc. #7).

## DISCUSSION

I.  Legal Standard

   A.  Subject Matter Jurisdiction

"[F]ederal courts are courts of limited jurisdiction and lack the power to disregard such limits as have been imposed by the Constitution or Congress." Durant, Nichols, Houston, Hodgson, & CorteseCosta, P.C. v. Dupont, 565 F.3d 56, 62 (2d Cir. 2009) (internal quotation marks omitted). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Nike, Inc. v. Already, LLC, 663 F.3d 89, 94 (2d Cir. 2011) (internal quotation marks omitted). The party invoking the Court's jurisdiction bears the burden of establishing that jurisdiction exists. Conyers v. Rossides, 558 F.3d 137, 143 (2d Cir. 2009).

When, as here, the case is at the pleading stage, in deciding a motion to dismiss under Rule 12(b)(1), the Court "must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor." Id. "However, argumentative inferences

favorable to the party asserting jurisdiction should not be drawn." <u>Buday v. N.Y. Yankees</u> <u>P'ship</u>, 486 F. App'x 894, 895 (2d Cir. 2012) (summary order) (quoting <u>Atl. Mut. Ins. Co. v.</u> <u>Balfour Maclaine Int'l Ltd.</u>, 968 F.2d 196, 198 (2d Cir. 1992)) (internal quotation marks omitted).[10] When a factual challenge to the Court's jurisdiction has been raised, "the court may resolve [any] disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits." <u>Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi</u>, 215 F.3d 247, 253 (2d Cir. 2000).

B.    <u>Insufficient Service of Process</u>

When a defendant moves for dismissal under Rule 12(b)(5), the Court must first address the preliminary questions of service and personal jurisdiction. <u>Hertzner v. U.S. Postal Serv.</u>, 2007 WL 869585, at *3 (E.D.N.Y. Mar. 20, 2007). When considering a motion to dismiss pursuant to 12(b)(5) for insufficient service of process, courts must look to matters outside the complaint to determine whether it has jurisdiction. <u>Mende v. Milestone Tech., Inc.</u>, 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003). "'Conclusory statements that a defendant was properly served are insufficient to overcome a defendant's sworn affidavit that he was never served with process.'" <u>Id</u>. When a defendant raises a Rule 12(b)(5) challenge, plaintiff bears the burden of proving service of process was adequate. <u>Id</u>.

C.    <u>Failure to State a Claim</u>

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in <u>Ashcroft</u> <u>v. Iqbal</u>, 556 U.S. 662, 679 (2009). First, plaintiff's legal conclusions and "[t]hreadbare recitals

---

[10]    Plaintiffs will be provided with copies of all unpublished opinions cited in this decision. <u>See</u> <u>Lebron v. Sanders</u>, 557 F.3d 76, 79 (2d Cir. 2009).

of the elements of a cause of action, supported by mere conclusory statements," are not entitled

to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. <u>Id.</u> at 678;

<u>Hayden v. Paterson</u>, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded

factual allegations, a court should assume their veracity and then determine whether they

plausibly give rise to an entitlement to relief." <u>Ashcroft v. Iqbal</u>, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard

of "plausibility." <u>Id</u>. at 678; <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 564 (2007). A claim is

facially plausible "when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>,

556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks

for more than a sheer possibility that a defendant has acted unlawfully." <u>Id</u>.

The Court must liberally construe submissions of <u>pro se</u> litigants, and interpret them "to

raise the strongest arguments that they <u>suggest</u>." <u>Triestman v. Fed. Bureau of Prisons</u>, 470 F.3d

471, 474 (2d Cir. 2006) (per curiam) (internal quotation marks and citation omitted). Applying

the pleading rules permissively is particularly appropriate when, as here, a <u>pro se</u> plaintiff alleges

civil rights violations. <u>See Sealed Plaintiff v. Sealed Defendant</u>, 537 F.3d 185, 191 (2d Cir.

2008). "Even in a <u>pro se</u> case, however . . . threadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice." <u>Chavis v. Chappius</u>, 618 F.3d

162, 170 (2d Cir. 2010) (internal quotation marks and citation omitted). Nor may the Court

"invent factual allegations" plaintiff has not pleaded. <u>Id</u>.

D.     <u>Judgment on the Pleadings</u>

At any time after the pleadings close and before trial commences, a party may move for

judgment on the pleadings under Rule 12(c). <u>See Citibank, N.A. v. Morgan Stanley & Co. Int'l</u>,

PLC, 724 F. Supp. 2d 407, 414 (S.D.N.Y. 2010). "The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." Cleveland v. Caplaw Enters., 448 F.3d 518, 520 (2d Cir. 2006).

II.     The Federal Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction

As to the IRS and the individual Federal Defendants in their official capacities, the Federal Defendants argue the Court lacks subject matter jurisdiction on the basis of sovereign immunity.

The Court agrees.

"Sovereign immunity is a jurisdictional bar," Lunney v. United States, 319 F.3d 550, 554 (2d Cir. 2003), and "[a]bsent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." Dorking Genetics v. United States, 76 F.3d 1261, 1263 (2d Cir. 1996) (internal quotation marks omitted). Plaintiffs bear the burden to show that Congress waived sovereign immunity with respect to their claims. See Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). Consent to suit must be expressed unequivocally, with any ambiguity construed strictly in favor of the sovereign. United States v. Nordic Vill., Inc., 503 U.S. 30, 33–34 (1992). "Because an action against a federal agency or federal officers in their official capacities is essentially a suit against the United States, such suits are . . . barred under the doctrine of sovereign immunity, unless such immunity is waived." Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 510 (2d Cir. 1994).

Moreover, plaintiffs have not shown their claims against the IRS and the individual Federal Defendants in their official capacities, which exclusively relate to tax assessment and collection, fall within any applicable waiver of sovereign immunity. See Perry v. Wright, 2013

WL 950921, at *4 (S.D.N.Y. Mar. 8, 2013) (summarizing provisions that allow taxpayers to file suit in federal court and the requirements for waiver of sovereign immunity for each).

To the extent plaintiffs assert claims under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671–80, the government's waiver of sovereign immunity under the FTCA is not applicable to "[a]ny claim arising in respect of the assessment or collection of any tax." 28 U.S.C. § 2680(c); see also Aetna Cas. & Sur. Co. v. United States, 71 F.3d 475, 477 (2d Cir. 1995) (affirming dismissal of tax-related tort claim on basis of sovereign immunity and 28 U.S.C. § 2680(c)). Thus, plaintiffs' tax-related claims under the FTCA, if any, are barred by sovereign immunity.

To the extent plaintiffs seek civil damages under the Internal Revenue Code for unauthorized tax collection,[11] plaintiffs have not pleaded any facts to suggest they exhausted the administrative remedies available to them within the IRS. In addition, the Federal Defendants submit an affidavit of Mary-Ellan Krcha, IRS Claims Manager, stating plaintiffs have not filed any administrative claims arising out of any negligent acts of IRS employees. Such administrative exhaustion is expressly required. See 26 U.S.C. § 7433(d)(1). Therefore, plaintiffs have not shown an applicable waiver of sovereign immunity under the Internal Revenue Code. See Perry v. Wright, 2013 WL 950921, at *4–5.

Nor does the Administrative Procedure Act ("APA") provide a waiver applicable to plaintiffs' claims. The APA provides "[a] person suffering legal wrong because of agency action, or adversely affected . . . by agency action . . . is entitled to judicial review thereof." 5

---

[11]    See 26 U.S.C. § 7433(a) (providing, in relevant part, "[i]f, in connection with any collection of Federal tax with respect to a taxpayer, any officer or employee of the Internal Revenue Service recklessly or intentionally, or by reason of negligence, disregards any provision of this title, or any regulation promulgated under this title, such taxpayer may bring a civil action for damages against the United States in a district court of the United States").

U.S.C. § 702. However, agency action is only reviewable under the APA when "no other adequate remedy in a court" exists. 5 U.S.C. § 704.

Here, other adequate remedies were plainly available to plaintiffs—namely, an appeals hearing challenging plaintiffs' underlying tax liability under 26 U.S.C. §§ 6330(b), (c)(2)(B), and an appeal of that determination to United States Tax Court under 26 U.S.C. § 6330(d). Thus, the APA does not provide a waiver of sovereign immunity with respect to plaintiffs' claims. See Perry v. Wright, 2013 WL 950921, at *5.

Lastly, to the extent plaintiffs assert claims under Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 397 (1971), against the IRS or the individual Federal Defendants in their official capacities, such claims are also barred by sovereign immunity and the Court is thus without subject jurisdiction over them. See Robinson v. Overseas Military Sales Corp., 21 F.3d at 510 (affirming dismissal of Bivens claims against federal agency and federal officers in their official capacities for lack of subject matter jurisdiction on basis of sovereign immunity); see also Daloia v. Rose, 849 F.2d 74, 75 (2d Cir. 1988) (per curiam) (construing Section 1983 claim by pro se plaintiff as a Bivens claim as against federal defendants).

The Court therefore lacks subject matter jurisdiction over plaintiffs' claims against the IRS and the individual Federal Defendants in their official capacities.

Accordingly, those claims are dismissed.

III.    Personal Service

The individual Federal Defendants, as well as Guy Chiarello and Mary Madden, assert plaintiffs failed adequately to serve them.

The Court agrees.

Federal Rule of Civil Procedure 4(e) governs service of process. Rule 4(e) provides:

[A] person . . . may be served in a judicial district of the United States by:
(1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
(2) doing any of the following:
    (A) delivering a copy of the summons and of the complaint to the individual personally;
    (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
    (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process

To serve an employee of the United States sued in an individual capacity for a cause of action arising from the employee's duties performed for the United States, "a party must serve the United States and also serve the officer or employee under Rule 4(e), (f), or (g)." Fed. R. Civ. P. 4(i)(3).

Here, plaintiffs' affidavit of service makes clear they did not comply with any of the three subparts of Rule 4(e)(2). In the affidavit, Vidurek asserts he served a copy of the summons, "[a]ction at law pages i-iv, pages 1-47," "Memorandum of Law in Support of Jurisdiction pages 1-10," and two affidavits "by depositing a true copy in the United States Post Office thereby mailing said document to the [defendants'] respective offices." (Pls.' Aff. of Service). Plaintiffs, in opposition to the Chiarello and Quinn motions, admit they did not provide defendants copies of the forty-five exhibits attached to the complaint because "[a]ll filed exhibits address the Action between the plaintiff and the government agents and agency and thereby have no bearing upon the financial institution defendants." (Pls.' Opp. at 3). Nevertheless, plaintiffs do not appear to have served any defendant with the exhibits, regardless of the whether the defendants worked for the IRS. Setting aside the other service deficiencies, without proof of

service of the entire complaint, <u>including exhibits</u>, plaintiffs cannot show proper service on these defendants.

Plaintiffs also did not comply with service requirements under the law of New York, the state in which this district is located, in accordance with Rule 4(e)(1). New York law for effecting service requires either personal service or a two-step process: "<u>first</u> leaving the [summons and complaint] with a person of suitable age and discretion at the individual's actual place of business or usual place of abode, and <u>second</u>, mailing the same to the individual at the individual's last known residence or actual place of business." <u>Polite v. Town of Clarkstown</u>, 60 F. Supp. 2d 214, 216 (S.D.N.Y. 1999) (emphasis added).

New York law also provides for personal service by first class mail "by mailing to the person or entity to be served, by first class mail, postage prepaid, a copy of the summons and complaint, or summons and notice or notice of petition and petition, together with two copies of a statement of service by mail and acknowledgement of receipt in the form set forth in subdivision (d) of this section, with a return envelope, postage prepaid, addressed to the sender." CPLR 312-a(a).

In addition to their admitted failure to provide defendants a complete copy of the complaint, plaintiffs make no allegation that they complied with the personal service step of New York's two-step service requirement. Nor do plaintiffs allege they included the exhibits to the complaint, an acknowledgement form, and the pre-paid envelope in their mailings to defendants to properly effect service by mail.

The Court next addresses whether each defendant contesting service was served in accordance with the law of the state where service was attempted.

Plaintiffs attempted to serve defendants Mary Madden, Maryellen Benecke, Linda Piatek, and Jeanette Willet in New York. As discussed above, the attempted service did not comply with New York state requirements. Accordingly, defendants Madden, Benecke, Piatek and Willet were not properly served in this case.

Plaintiffs attempted to serve defendants Brenda Dial, Layne Carver, and Jonnie Melendez in Utah. Under Utah R. Civ. P. 4(d)(2)(A), (B), "a complaint can only be served upon an individual or an entity by mail if the defendant signs a document indicating receipt." Conlin Enter. Corp. v. Snews LLC, 2008 WL 803041, at *2 (D. Utah Mar. 24, 2008) (internal quotation omitted). Here, plaintiffs do not allege any compliance with Utah service requirements, nor do they provide the signed documents indicating Dial, Carver, or Melendez's receipt of the mailed summons and—again, partial—complaint. Accordingly Dial, Carver, and Melendez were not properly served in this case.

Lastly, plaintiffs attempted to serve defendant Chiarello in Colorado. Under Colorado state law, service of process may only be effected by a method provided in Rule 4(e). See C.R.C.P. 4(e). As discussed above, plaintiffs failed to comply with the methods of service articulated in Rule 4(e). Moreover, Colorado allows for service by mail "only in actions affecting specific property or status or other proceedings in rem." C.R.C.P. 4(g). Therefore, Chiarello was not properly served in this case.

Accordingly the Court has no jurisdiction over defendants Chiarello, Madden, Dial, Carver, Melendez, Benecke, Piatek, and Willet, and they must all be dismissed from this case.

IV.    Claims Against Defendant Quinn

Defendant Quinn did not raise defective service in his motion to dismiss and arguably waives service. Accordingly, the Court addresses the merits of plaintiffs' claims against Quinn as the sole remaining defendant who has appeared in this case.

A.    Criminal Claims

Plaintiffs assert claims for violations of various federal criminal statutes. However, with the exception of RICO, individuals "cannot bring suits as private attorneys general in an effort to right potential violations of criminal statutes." Wright v. Waterside Plaza LLC, 2008 WL 872281, at *2 (S.D.N.Y. Apr. 2, 2008) (citing Chrysler Corp. v. Ash, 441 U.S. 281, 316 (1979)). Therefore, with the exception of RICO (addressed infra), plaintiffs cannot bring claims under the criminal statutes they cite because these statutes do not provide for private rights of action. See, e.g., id. (no private right of action under 18 U.S.C. § 1341); Bender v. Gen. Servs. Admin., 2006 WL 988241, at *1 (S.D.N.Y. Apr. 14, 2006) (no private right of action under 18 U.S.C. §§ 241, 242, and 1001); Greenspan v. Work, 1991 WL 255373, at *5 n.2 (N.D.N.Y. Nov. 22, 1991) (no private right of action under 18 U.S.C. § 872); Morton v. Granite, 1991 WL 33333, at *12–13 (S.D.N.Y. Mar. 5, 1991) (no private right of action under 26 U.S.C. § 7214); see also Andrews v. Heaton, 483 F.3d 1070, 1076 (10th Cir. 2007) (same).

Moreover, plaintiffs provide no authority, and the Court is aware of none, supporting any implied private rights of action under these statutes. See Zahl v. Kosovsky, 2011 WL 779784, at *10 (S.D.N.Y. Mar. 3, 2011) ("[I]n determining whether a criminal statute implies a private right of action 'the "dispositive question" is whether Congress intended to create a private right of action,' and courts 'are to be "especially reluctant" to imply a private right of action where the

statute explicitly provides a different remedy.'" (quoting <u>Alaji Salahuddin v. Alaji</u>, 232 F.3d 305, 308 (2d Cir. 2000))).  The Court declines to infer such rights.[12]

Accordingly, plaintiffs' claims under 26 U.S.C. § 7214 and 18 U.S.C. §§ 241, 242, 872, 1341, and 1001 are dismissed.

B.    RICO

In contrast with the criminal statutes discussed above, Congress <u>has</u> created a private right of action under RICO.  <u>See</u> 18 U.S.C. § 1964(c).  Nevertheless, plaintiffs have not plausibly pleaded a civil RICO claim.

1.    Substantive RICO Claim

RICO Section 1962(c) provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c).  Thus, to state a substantive RICO claim under Section 1962(c), a plaintiff must plead "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." <u>Sedima v. Imrex Co.</u>, 473 U.S. 479, 496 (1985) (footnote omitted).

Plaintiffs have failed to state a claim under RICO because, among other things, they have not plausibly alleged an enterprise.

"A RICO enterprise may be a lawful entity or an association-in-fact." <u>Kalimantano GmbH v. Motion in Time, Inc.</u>, 939 F. Supp. 2d 392, 405 (S.D.N.Y. 2013).  Construing the

---

[12]    Moreover, Section 1983 is not a mechanism to assert violations of federal statutes.  <u>See</u> <u>Blessing v. Freestone</u>, 520 U.S. 329, 340 (1997) ("In order to seek redress through § 1983, . . . a plaintiff must assert the violation of a federal <u>right</u>, not merely a violation of federal <u>law</u>.").

complaint liberally, plaintiffs appear to allege an "association-in-fact" enterprise consisting of the various named defendants.

To the extent plaintiffs seek to plead an enterprise consisting of the IRS as a "lawful entity," plaintiffs' RICO claim fails because "the defendant and the enterprise must be distinct." Kalimantano GmbH v. Motion in Time, Inc., 939 F. Supp. 2d at 405 ("To establish liability under § 1962(c), [the plaintiff] must allege and prove the existence of two distinct entities; (1) a 'person' [,] and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." (quoting Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 161 (2001))). Nor can plaintiffs state a RICO claim on the basis of an enterprise consisting of the IRS and its agents. See Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A., 30 F.3d 339, 344 (2d Cir. 1994) ("[W]here employees of a corporation associate together to commit a pattern of predicate acts in the course of their employment and on behalf of the corporation, the employees in association with the corporation do not form an enterprise distinct from the corporation.").

"[F]or an association of individuals to constitute an enterprise, the individuals must share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes." First Capital Asset Mgmt. v. Satinwood, Inc., 385 F.3d 159, 174 (2d Cir. 2004). To withstand a Rule 12(b)(6) motion, a plaintiff must "explain each participant's role in the alleged course of fraudulent or illegal conduct" to show the enterprise members "functioned as a unit." Id. at 174–75 (emphasis added).

Here, plaintiffs fail to allege any facts about Quinn's role in the alleged scheme to target Vidurek for heightened tax scrutiny. Plaintiffs have not alleged any facts whatsoever articulating how the purported enterprise members functioned as a unit to expose Vidurek to heightened

scrutiny with respect to his taxes. Plaintiffs' conclusory list of entities and individuals does not plausibly allege an enterprise.

Accordingly, plaintiffs' substantive RICO claim is dismissed.

### 2. RICO Conspiracy Claim

To the extent plaintiffs seek to state a claim for conspiracy to violate RICO, because plaintiffs have failed to state a substantive RICO claim, any conspiracy claim necessarily fails as well. First Capital Asset Mgmt. v. Satinwood, Inc., 385 F.3d 159, 182 (2d Cir. 2004).

Plaintiffs' RICO conspiracy claim is therefore dismissed.

### C. Constitutional Claims

Reading the complaint liberally, plaintiffs appear to bring Section 1983 claims for procedural and substantive due process violations and for unlawful seizure under the Fourth Amendment. Plaintiffs also bring conspiracy claims under Sections 1985 and 1986.

### 1. Section 1983 Claim

"To state a claim under § 1983, a plaintiff must allege (1) the deprivation of a right secured by the Constitution or laws of the United States (2) which has taken place under color of state law." Rodriguez v. Weprin, 116 F.3d 62, 65 (2d Cir. 1997) (emphasis added). Plaintiff must also allege defendants' personal involvement in the claimed violation of plaintiff's rights. Provost v. City of Newburgh, 262 F.3d 146, 154 (2d Cir. 2001). In other words, a plaintiff bringing a Section 1983 claim "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. at 676.

Plaintiffs have not alleged any facts to suggest Quinn, the president and CEO of RSB, a private entity, is a government actor. Moreover, plaintiffs cannot assert constitutional claims

21

arising from a third party financial institution's compliance with an IRS summons. See Muratore
v. Dept. of the Treasury, 315 F. Supp. 2d 305, 310–11 (W.D.N.Y. 2004). Indeed, 26 U.S.C. §
7609(i)(3) provides absolute immunity for a financial institutions that respond in good faith to an
IRS summons.

Accordingly, plaintiffs' Section 1983 claims against Quinn, the only remaining
defendant, are dismissed.

### 2. Conspiracy

Based on the allegation that defendants targeted Vidurek for heightened tax scrutiny
because of his Tea Party affiliation, plaintiffs appear to assert their claim under Section 1985(3)
for conspiracy to interfere with civil rights. To state a conspiracy claim under Section 1985(3),
plaintiffs must allege "(1) a conspiracy, (2) for the purpose of depriving any person or class of
persons of the equal protection of the laws or of equal privileges and immunities under the laws,
(3) an act in furtherance of the conspiracy, and (4) whereby a person is injured in his person or
property or deprived of a right or privilege of a citizen." Iqbal v. Hasty, 490 F.3d 143, 176 (2d
Cir. 2007), rev'd on other grounds by Ashcroft v. Iqbal, 556 U.S. 662 (2009). To state a claim
under Section 1985(3), plaintiffs must also allege the conspiracy was motivated by some racial
or other class-based animus. See id.; Gagliardi v. Vill. of Pawling, 18 F.3d 188, 194 (2d Cir.
1994) ("To recover under section 1985(3), a plaintiff must allege some racial, or perhaps
otherwise class-based, invidiously discriminatory animus behind the conspirators' action."
(internal quotation marks omitted)).

As discussed above, plaintiffs fail adequately to plead a conspiracy between the
defendants. Moreover, plaintiffs have failed plausibly to plead the alleged conspiracy was
motivated by racial or other class-based animus.

Plaintiffs allege that on May 10, 2013, "the news reported that the IRS apologized for flagging Tea Party groups for a higher level of scrutiny than other organizations during the 2012 election." (Compl. at 3). Plaintiffs allege Vidurek was "a target of the aforesaid scrutiny" and was subjected to this "vindictive act" because he is "a tea party organizer." (Id.). Vidurek alleges he "believes that IRS agents have singled [him] out for political reasons with intent to punish." (Id.).

Although in Keating v. Carey, 706 F.2d 377, 386–87 (2d Cir. 1983), the Second Circuit held political parties are protected groups under Section 1985, the Supreme Court later "suggested that the scope of section 1985 might not extend to include discrimination against political groups except where that discrimination was based on racial animus." Gleason v. McBride, 869 F.2d 688, 695 (2d Cir. 1989) (citing United Brotherhood of Carpenters & Joiners of Am., Local 610 v. Scott, 463 U.S. 825, 836–37 (1983)). Thus, some district courts in this Circuit have since concluded that political affiliation alone does not constitute a protected "class" under Section 1985. See, e.g., Fulani v. McAuliffe, 2005 WL 2276881, at *6 (S.D.N.Y. Sept. 19, 2005) (concluding the Second Circuit "does not recognize political affiliations for purposes of class membership under § 1985" and holding plaintiffs therefore failed to state a Section 1985 claim).

Even assuming, arguendo, that membership in the Tea Party constitutes membership in a protected group under Section 1985, plaintiffs nevertheless plead no facts whatsoever in support of their bald assertions of animus on the basis of that affiliation, and conclusory allegations are not entitled to the assumption of truth. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). Therefore, plaintiffs have not plausibly pleaded a Section 1985 claim.

Having failed to plead a claim under Section 1985, plaintiffs' Section 1986 claim necessarily fails as well. See, e.g., Graaf v. N. Shore Univ. Hosp., 1 F. Supp. 2d 318, 323 (S.D.N.Y. 1998) ("Absent a § 1985 claim, a plaintiff cannot bring a § 1986 claim in this circuit." (citing Graham v. Henderson, 89 F.3d 75, 82 (2d Cir. 1996)).

Accordingly, plaintiffs' conspiracy claims are dismissed.

V.    Internal Revenue Code Claims

Although plaintiffs do not expressly rely on these statutes in their complaint, liberally construed, plaintiffs seek civil damages under the Internal Revenue Code for unauthorized tax collection. See 26 U.S.C. § 7433(a). However, the Federal Defendants, the only defendants against whom plaintiffs could bring such a claim, are no longer in this case, as explained above.

Accordingly, plaintiffs' claims under 26 U.S.C. § 7433(a) are dismissed.

VI.   Leave to Replead

Rule 15(a)(2) instructs that courts "should freely give leave" to amend a complaint "when justice so requires." Liberal application of Rule 15(a) is warranted with respect to pro se litigants who "should be afforded every reasonable opportunity to demonstrate that [they have] a valid claim." Matima v. Celli, 228 F.3d 68, 81 (2d Cir. 2000). District courts "should not dismiss [pro se complaints] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation omitted).

However, leave to amend may "properly be denied for . . . futility of amendment." Ruotolo v. City of N.Y., 514 F.3d 184, 191 (2d Cir. 2008) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)). This is true even when plaintiff is proceeding pro se. See Martin v. Dickson, 100 F. App'x 14, 16 (2d Cir. 2004) (summary order).

Here, although the Court dismissed the complaint largely on procedural grounds, repleading would be futile, because the problems with plaintiffs' pleading are substantive. As discussed above, plaintiffs' claims either are barred by sovereign immunity, do not provide a private right of action, are barred by plaintiffs' failure to exhaust administrative remedies, or cannot be brought against non-government actors.

Accordingly, the Court declines to grant plaintiffs leave to amend their complaint.

VII.   State Law Claims

Having dismissed all federal question claims, the Court declines to exercise supplemental jurisdiction over plaintiffs' state law claims. 28 U.S.C. § 1367(c)(3).

VIII.   Filing Injunction

Defendant Quinn[13] moved the Court to enjoin plaintiffs from filing additional cases arising from the same facts, absent prior court approval. Defendants Madden,[14] Chiarello, and the Federal Defendants join in or otherwise support that request.

"District courts have the authority to issue filing injunctions to prevent vexatious litigation." Iwachiw v. N.Y.C. Bd. of Elections, 126 F. App'x 27, 29 (2d Cir. 2005) (summary order); see also Polur v. Raffe, 912 F.2d 52, 57 (2d Cir. 1990). "In determining whether to grant a filing injunction, district courts must consider five factors: (1) the litigant's history of litigation and whether it entailed vexatious, harassing, or duplicative lawsuits; (2) whether the litigant has an objective good faith expectation of prevailing; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to

---

[13]   Individually and on behalf RSB.

[14]   Individually and on behalf of HVFCU.

protect the courts and other parties." Iwachiw v. N.Y.C. Bd. of Elections, 126 F. App'x at 29.

"The question the court ultimately must answer is 'whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties.'" Schafler v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 707 F. App'x 751 (Mem), 752 (2d Cir. 2018) (summary order) (quoting Safir v. U.S. Lines, Inc., 792 F.2d 19, 24 (2d Cir. 1986)).

The Court addresses each factor in turn. Having presided for several years over this case and plaintiffs' 2013 lawsuit, Vidurek v. Miller, 13 Civ. 4476 (S.D.N.Y.), the Court is familiar with plaintiffs' duplicative and meritless cases. See Vidurek v. Krajick, 15 Civ. 2175 (S.D.N.Y.); Vidurek v. Koskinen, 15 Civ. 2188 (S.D.N.Y.); Vidurek v. IRS, 17 Civ. 7971 (S.D.N.Y.); Vidurek v. Koskinen, 17 Civ. 9064 (S.D.N.Y.). This Court previously ruled on and dismissed claims nearly identical to the claims before the Court now. (Vidurek v. Miller, 13 Civ. 4476 (S.D.N.Y.), Doc. #38). In that decision, the Court set out the many deficiencies in plaintiffs' complaint, none of which plaintiffs addressed or attempted to correct in the instant case. Therefore, plaintiffs do not have an objective good faith expectation of prevailing in this current case.

Plaintiffs are pro se, and, as such, are afforded special solicitude. Such solicitude is evidenced by the painstaking work defendants and the Court have taken to parse the dense, convoluted, and nearly incomprehensible complaint in this case and in prior cases, as well as other papers filed on the docket over the course of these multiple litigations. Because of plaintiffs' duplicative and meritless complaints, a filing injunction is the appropriate means of protecting the Court and the other parties from further harassment, burden, and expense.

Accordingly, absent prior Court permission, plaintiffs are enjoined from filing additional complaints regarding their 2008 and 2009 tax liability and subsequent lien.

## CONCLUSION

Defendant Quinn's motion to dismiss the complaint and for a filing injunction is GRANTED.

Defendant Chiarello's motion to dismiss the complaint is GRANTED.

Defendant Madden's motion to dismiss the complaint is GRANTED.

The Federal Defendants' motion to dismiss the complaint is GRANTED.

The claims against defendants Schulman and Dorsey are DISMISSED sua sponte for insufficient service of process and otherwise as plainly without merit.

The Clerk is directed to terminate the motions (Docs. ##5, 8, 21, 35) and close this case.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

Dated: July 25, 2018
White Plains, NY

SO ORDERED:

Vincent L. Briccetti
United States District Judge